CASEY JENSEN, Bar No. 263593
Email Address: cjensen@deconsel.com
STEPHEN ZELLER, Bar No. 265664
Email address: szeller@deconsel.com
members of DeCARLO & SHANLEY,
a Professional Corporation
533 S. Fremont Avenue, 9th Floor
Los Angeles, California 90071-1706
Telephone (213) 488-4100
Telecopier (213) 488-4180

ATTORNEYS FOR PLAINTIFFS, CARPENTERS SOUTHWEST ADMINISTRATIVE CORPORATION and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CARPENTERS SOUTHWEST ADMINISTRATIVE CORPORATION, a California non-profit corporation; and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS,

Plaintiffs,

v.

MCL CONSTRUCTION, INC., a California corporation; WADE ANTHONY McCONNELL, an individual; LORAINE ANN McCONNELL, an individual; DOES 1 through 100, inclusive, inclusive,

Defendants.

CASE NO.

COMPLAINT FOR:

1. DAMAGES FOR FAILURE TO PAY FRINGE BENEFIT CONTRIBUTIONS;
2. DEFALCATION OF FIDUCIARY BY THE MISAPPROPRIATION OF VACATION AND DUES FUNDS HELD IN FIDUCIARY CAPACITY;
3. BREACH OF SETTLEMENT AGREEMENT

**JURISDICTION**

1. This is a civil action 1) to recover fringe benefit contributions, 2) for defalcation of fiduciary, and 3) for breach of settlement agreement. This action arises and jurisdiction of the court is founded on section 301 of the Labor-Management Relations Act of 1947, as amended ("LMRA"), 29 U.S.C. §

///

185a, and Sections 502 and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132 and 1145.

**PARTIES AND OTHERS**

2. CARPENTERS SOUTHWEST ADMINISTRATIVE CORPORATION, a California non-profit corporation ("CSAC") is a non-profit corporation duly organized and existing under and by virtue of the laws of the State of California. CSAC's principal place of business is in the County of Los Angeles, State of California.

3. At all relevant times herein, the BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS were and now are fiduciaries and are duly authorized and acting trustees of those ERISA Trust Funds defined in paragraph six.

4. CSAC and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS are also authorized agents to act on behalf of the remaining Funds and entities (defined in paragraph nine) with respect to these delinquencies. CSAC and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS are sometimes collectively referred to as "PLAINTIFFS."

5. The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants named herein as DOES 1 through 100, are unknown at this time to PLAINTIFFS. PLAINTIFFS therefore sue the defendants by such fictitious names, and PLAINTIFFS will amend this complaint to show their true names and capacities when the same has been ascertained. PLAINTIFFS are informed and believe and thereon allege that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, either through its own conduct, or through the conduct of its agents, servants and/or employees, or in some other manner as yet unknown, and that PLAINTIFFS' damages as herein alleged were proximately caused by those defendants.

6. At all relevant times, the Southwest Carpenters Health and Welfare

Trust, the Southwest Carpenters Pension Trust, the Southwest Carpenters Vacation Trust, and the Southwest Carpenters Training Fund, were and are express trusts which exist pursuant to section 302 of the LMRA, 29 U.S.C. §186, and multiemployer plans within the meaning of section 3 of ERISA, 29 U.S.C. §1002.

7. At all relevant times, the Construction Industry Advancement Fund of Southern California, the Residential Housing Contract Administration Trust Fund, the Contractors-Carpenters Grievance and Arbitration Trust, and the Contract Administration Trust for Carpenter-Management Relations, were and are express trusts which exist pursuant to section 302 of the LMRA, 29 U.S.C. §186.

8. At all relevant times, the Carpenters-Contractors Cooperation Committee ("CCCC"), was and is a non-profit California corporation which exists pursuant to section 5(b) of the Labor Management Cooperation Act of 1978, 92 Stat. 2020 (1978), for the purposes set forth in section 302(c)(9) of LMRA, 29 U.S.C. § 186(c)(9).

9. CSAC is the administrator of the Southwest Carpenters Health and Welfare Trust, the Southwest Carpenters Pension Trust, the Southwest Carpenters Vacation Trust, and the Southwest Carpenters Training Fund, and assignee of the Construction Industry Advancement Fund of Southern California, the Residential Housing Contract Administration Trust Fund, the Contractors-Carpenters Grievance and Arbitration Trust, the Contract Administration Trust for Carpenter-Management Relations, and the Carpenters-Contractors Cooperation Committee (collectively, the "PLANS"), and as such is a plan fiduciary within the meaning of section 3 of ERISA, 29 U.S.C. §1002.

10. The duly authorized and acting trustees or directors of each of the PLANS have also assigned to CSAC all their right, title and interest in and to any and all amounts due and owing to the respective PLANS by the employer as herein alleged.

11. The Southwest Regional Council of Carpenters and its affiliated local

unions ("UNIONS") affiliated with United Brotherhood of Carpenters and Joiners of America, are labor organizations that are a party to the collective bargaining agreements involved.

12. At all relevant times, employer, MCL CONSTRUCTION, INC., a California corporation ("EMPLOYER"), was and is a contractor engaged in the construction industry within the jurisdiction of the relevant UNIONS.

13. At all relevant times, WADE ANTHONY McCONNELL, an individual, was and is listed with the California Secretary of State as Chief Executive Officer, Director and Owner of EMPLOYER, and is referred to collectively in this complaint (with other individuals of EMPLOYER) as "INDIVIDUALS."

14. At all relevant times, LORAINE ANN McCONNELL, an individual, was and is listed with the California Secretary of State as Chief Financial Officer, Secretary, and Officer of EMPLOYER, and is referred to collectively in this complaint (with other individuals of EMPLOYER) as "INDIVIDUALS."

**FIRST CLAIM FOR RELIEF**

**(DAMAGES FOR FAILURE TO PAY FRINGE BENEFIT CONTRIBUTIONS AGAINST MCL CONSTRUCTION, INC., a California corporation; and DOES 1 through 5)**

15. On or about the date set forth thereon, EMPLOYER made, executed and delivered to the UNION, a Carpenters Memorandum Agreement, dated February 23, 2007 ("MEMORANDUM AGREEMENT"). A true and correct copy is attached hereto, marked as Exhibit "1" and incorporated herein by reference.

16. The MEMORANDUM AGREEMENT binds EMPLOYER to the terms and conditions of the Carpenters Master Labor Agreement between United General Contractors, Inc. and the Southwest Regional Council of Carpenters and its affiliated Local Unions, United Brotherhood of Carpenters and Joiners of America, dated July 1, 2006, and any renewals or subsequent Master Labor Agreements, and

the PLANS' agreements and any amendments, modifications, extensions, supplementations or renewals of the PLANS' agreements (collectively referred to as "AGREEMENTS").  The PLANS are third party beneficiaries of the MEMORANDUM AGREEMENT and Master Labor Agreements.

17.     The Master Labor Agreement binds EMPLOYER to any renewals or subsequent applicable Master Labor Agreements and the PLANS' AGREEMENTS (collectively, the "AGREEMENTS").

18.     The AGREEMENTS require EMPLOYER to pay fringe benefit contributions at the rates set forth therein for every hour worked by employees performing services covered by the AGREEMENTS, and on account of all compensation paid to employees performing services covered by the AGREEMENTS.

19.     The AGREEMENTS require EMPLOYER to make the fringe benefit contributions by way of Employers Monthly Reports ("REPORTS") to the PLANS at their place of business in Los Angeles, California, on or before the 25th day of each month following the month during which the hours for which contributions are due were worked or paid.  Further, the AGREEMENTS specifically provide that the venue of an action to recover delinquent fringe benefit contributions shall be in the County of Los Angeles.

20.     In acknowledging both that the regular and prompt payment of employer contributions is essential to the maintenance of the PLANS, and the extreme difficulty, if not impracticability, of fixing the actual expense and damage to the PLANS when such monthly contributions are not paid when due, the AGREEMENTS provide that the amount of contractual damages to the PLANS resulting from a failure to pay contributions when due shall be presumed to be the sum of $20.00 per delinquency or 10 percent of the amount of the contributions due, whichever is greater.  This amount shall become due and payable to the CSAC as liquidated damages in addition to the unpaid contributions or contributions paid

late.

21. EMPLOYER engaged workers who performed services covered by the AGREEMENTS and who performed labor on works of construction within the jurisdiction of the PLANS' AGREEMENTS undertaken by EMPLOYER during the term of the PLANS' AGREEMENTS.

22. EMPLOYER has failed to pay the fringe benefit contributions in the manner prescribed by the AGREEMENTS, and there is now due and owing the PLANS from EMPLOYER the amounts set forth in Exhibit "2."

23. The PLANS have conducted Audits, which indicate that EMPLOYER failed to report and pay all contributions owed during this time period. A true and correct copy of the Audit Invoices (social security numbers redacted), dated February 19, 2018 and April 30, 2018, are attached as Exhibit "3."

24. The AGREEMENTS require EMPLOYER to pay for the expense of auditing EMPLOYER's business records if an audit by the PLANS indicates that EMPLOYER failed to report and pay all contributions.

25. As a result of the failure to pay fringe benefit contributions in the manner prescribed by the AGREEMENTS, EMPLOYER is liable for interest on the unpaid contributions from the first of the month following the date due, at the rate prescribed by the AGREEMENTS.

26. As a result of the failure to pay fringe benefit contributions in the manner prescribed by the AGREEMENTS, EMPLOYER is liable for an amount equal to the greater of interest on the unpaid contributions as prescribed by section 6621 of the Internal Revenue Code of 1954, 26 U.S.C. §6621, or liquidated damages provided for under the AGREEMENTS.

27. It has been necessary for PLAINTIFFS to engage counsel to bring this action to recover the delinquent fringe benefit contributions. Pursuant to the AGREEMENTS and section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), EMPLOYER is liable for reasonable attorneys' fees incurred in litigating this

matter.

28. The PLANS have complied with all conditions precedent.

29. CSAC has, concurrently with the filing of this complaint, served a copy of the same upon the Secretary of Labor and Secretary of the Treasury.

**SECOND CLAIM FOR RELIEF**
**(DEFALCATION OF FIDUCIARY BY THE MISAPPROPRIATION OF VACATION FUNDS HELD IN FIDUCIARY CAPACITY - WADE ANTHONY McCONNELL, an individual; LORRAINE ANN McCONNELL, an individual; and DOES 6 through 10)**

30. PLAINTIFFS reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 29 of their First Claim for Relief; and allege a Second Claim for Relief against INDIVIDUALS for defalcation of fiduciary by the misappropriation of vacation/dues funds held in fiduciary capacity by INDIVIDUALS as follows:

31. The Vacation Plan (which includes the supplemental dues) was created by the AGREEMENTS. The AGREEMENTS obligate EMPLOYER to include the amounts to be paid to the Vacation Plan in the individual employees taxable income and to submit the amount so deducted monthly to the Vacation Plan.

32. PLAINTIFFS are informed and believe and, based on such information and belief, allege that during the months of May 2016 through December 2016, INDIVIDUALS withheld funds from EMPLOYER's employees. INDIVIDUALS failed to properly forward the withheld funds to the Vacation Plan, in an amount to be proven at trial. By acting in this manner, INDIVIDUALS exercised discretionary authority or control over the assets of the Vacation Plan and were thus a fiduciary.

33. PLAINTIFFS are informed and believe and based on such information and belief, allege that EMPLOYER was, and still is, justly and truly indebted to said

Vacation Plan (as to contributions only) in an amount as set forth in Exhibit "4."

34. In assuming the obligations to ascertain and report contributions to the Vacation Plan, INDIVIDUALS entered into a fiduciary relationship with the Vacation Plan, and were thereby obligated to pay the Vacation Plan all monies withheld from the employees' wages.

35. PLAINTIFFS are informed and believe and, based on such information and belief, allege that by failing to segregate trust property, by misappropriating or failing to account for trust property and by failing to timely tender funds withheld from employees to the Vacation Plan, INDIVIDUALS breached INDIVIDUALS' fiduciary obligations and thus engaged in defalcation.

36. At all times material herein, INDIVIDUALS are and were a fiduciary with respect to the PLANS within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), because INDIVIDUALS exercised discretionary authority or control respecting management of disposition of assets of the PLANS.

37. By engaging in the acts and omissions described herein, INDIVIDUALS caused assets of the PLANS to inure to the benefit of an employer, namely EMPLOYER, and not to the benefit of participants in the PLANS and their beneficiaries and not for defraying reasonable expenses of the PLANS. These actions were in violation of Section 403(c)(1) of ERISA, 29 U.S.C. §1103(c)(1).

**THIRD CLAIM FOR RELIEF**

**(BREACH OF SETTLEMENT AGREEMENT -**

**MCL CONSTRUCTION, INC., a California corporation;**

**and DOES 10 through 15)**

38. PLAINTIFFS reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 29 of its First Claim for Relief and every allegation contained in paragraphs 30 through 37 of its Second Claim for Relief. This Third Claim for Relief is asserted as to MCL CONSTRUCTION, INC.,

a California corporation; and DOES 10 through 15, ("EMPLOYER").

39. On or about March 11, 2014, settlement was reached as to EMPLOYER. Pursuant to this settlement, EMPLOYER entered into a written SETTLEMENT AGREEMENT executed on or about March 11, 2014. A true and correct copy of the SETTLEMENT AGREEMENT is attached hereto, marked Exhibit "5" and incorporated herein by reference.

40. By this SETTLEMENT AGREEMENT, EMPLOYER promised that upon execution, it would pay to CSAC the sum of $5,000.00 as a down payment on the payment plan; that EMPLOYER would pay the remaining sum of $78,392.77 in monthly payments of $350.00 on the first day of each month; that if payments were not received by CSAC in the full amount agreed upon on the payment due date, upon ten (10) days notice to EMPLOYER CSAC could declare the payment plan in default.

41. CSAC's counsel's paralegal sent an email dated August 12, 2016 giving the EMPLOYER notice of its breach of the SETTLEMENT AGREEMENT and demanding payment. True and correct copy is attached hereto, marked as Exhibit "6" and incorporated herein by reference.

42. PLAINTIFFS have complied with all conditions on their part to be performed under the terms of the SETTLEMENT AGREEMENT.

43. EMPLOYER has failed to comply with the terms of the SETTLEMENT AGREEMENT.

WHEREFORE, PLAINTIFFS pray for judgment as follows:

**FIRST CLAIM FOR RELIEF**

**(FAILURE TO PAY FRINGE BENEFIT CONTRIBUTIONS - MCL CONSTRUCTION, INC. a California corporation; and DOES 1 through 5;**

1. For unpaid contributions in the sum of $101,931.19;

2. For interest and liquidated damages, as provided in the

AGREEMENTS;

3. For a statutory amount equal to the greater of the interest on unpaid contributions which were owing as of the time of the filing of the complaint herein (at the rate prescribed by law), or liquidated damages as provided in the AGREEMENTS, in the amount to be determined.

**SECOND CLAIM FOR RELIEF**

**(DEFALCATION OF FIDUCIARY BY THE MISAPPROPRIATION OF VACATION FUNDS HELD IN FIDUCIARY CAPACITY - WADE ANTHONY McCONNELL, an individual; LORAINE ANN McCONNELL, an individual; and DOES 6 through 10)**

1. That the Court determine that INDIVIDUALS are liable for the funds withheld from the Vacation Plan in the sum of $11,615.91;

2. That the Court determine the remaining issues and render judgment for PLAINTIFFS for the amount of debt, plus interest as proven at trial.

**THIRD CLAIM FOR RELIEF**

**(BREACH OF SETTLEMENT AGREEMENT - MCL CONSTRUCTION, INC., a California corporation; and DOES 10 through 15)**

1. For unpaid amount owed pursuant to the SETTLEMENT AGREEMENT in the sum of $64,723.89;

2. For interest, as provided in the SETTLEMENT AGREEMENT, on the unpaid balance of the settlement agreement.

**AS TO ALL OF PLAINTIFFS' CLAIMS FOR RELIEF:**

1. For reasonable attorneys' fees;

2. For costs of this action;

///

3. For further contributions according to proof; and

4. For such other and further relief as the court deems proper.

Dated: May 8, 2019

DeCARLO & SHANLEY,
a Professional Corporation

By: ______________________
CASEY JENSEN
Attorneys for Plaintiffs,
CARPENTERS SOUTHWEST ADMINISTRATIVE CORPORATION and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS