# CARPENTERS MEMORANDUM AGREEMENT
## 2006-2010

It is agreed between the undersigned , ("Contractor"), and the Southwest Regional Council of Carpenters, United Brotherhood of Carpenters and Joiners of America in the 12 Southern California Counties, namely, Los Angeles, Orange, San Diego, San Bernardino, Riverside, Imperial, Ventura, Santa Barbara, San Luis Obispo, Kern, Inyo and Mono, the State of Nevada, the State of Utah and the State of Arizona , ("Carpenters' Union"), in consideration of services performed and to be performed by Carpenters for the Contractor, as follows:

1.  The Contractor agrees to comply with all the terms, including wages, hours, and working conditions and rules as set forth in the Agreement referred to as the Carpenters Master Labor Agreement between United General Contractors Association, Inc. (hereinafter the "Association") and the Southwest Regional Council of Carpenters and its affiliated Local Unions, United Brotherhood of Carpenters and Joiners of America, dated July 1, 2006, as well as the appropriate Master Agreements covering the State of Nevada, Utah and Arizona, and the United General Contractors Southern California Master Labor Agreement, and any extensions, renewals or subsequent Master Labor Agreements, and the Agreements establishing: (1) the Southwest Carpenters Pension Trust, dated September 14, 1959; (2) the Southwest Carpenters Health & Welfare Trust, dated February 8, 1955; (3) the Southwest Carpenters Training Fund, dated May 1, 1960; (4) the Southwest Carpenters Vacation Trust, dated April 1, 1962; (5) the Contract Administration Trust Fund for Carpenters-Management Relations, dated October 1, 1986; (6) the Construction Industry Cooperation Committee, dated October 1, 1986; (7) the Acoustical Industry Advancement Fund; (8) the Carpenters Industry Advancement Fund of Southern California, dated September 19, 1972; and (9) the Independent Contractors Grievance and Arbitration Trust, dated September 1, 1980; (hereafter collectively referred to as the "Carpenters Trust Funds") and any amendments, modifications, extensions and renewals of such Agreements and the Trust Agreements and any agreements establishing other benefits or plans negotiated by the Carpenters' Unions and the Contractor Association signatory to such Master Labor Agreement. Except as specifically excluded by this Memorandum Agreement, such Master Labor Agreements and Trust Agreements are specifically incorporated by reference and made a part of this Memorandum Agreement.

2.  The Contractor agrees to pay the Carpenters Trust Funds the sums in the amounts and manner provided for in the Master Labor Agreement and further agrees to be bound by the Trust Agreements and all amendments, modifications, extensions and renewals thereto. The Contractor agrees to make a contribution to the Carpenters' International Training Fund and to the UBC Labor Management Education and Development Fund, as allocated by the Union from negotiated wage increases. These contributions will be collected with the existing contributions to the Carpenters Health & Welfare Trust, the Carpenters Apprenticeship Trust and/or the Carpenters Contractors Cooperation Committee, or other Carpenter funds, as allocated by the Union. The

1



EXHIBIT NO. 1
PAGE NO. 12

Employer agrees to be bound to the Agreements and Declarations of Trust for the International Funds as they exist and as they may be amended or restated, and to such rules and regulations as adopted by the Trusts. Upon request the employer may receive the latest annual report prepared for the Funds.

3. The Contractor agrees that he does irrevocably designate and appoint the Employers mentioned in the Agreements establishing the various Carpenters Trust Funds along with representatives designated by the United General Contractors, Inc. and the Association as his attorney-in-fact, for the selection, removal and substitution of Trustees or Directors as provided by or pursuant to the Master Labor Agreement and Trust Agreements and By-Laws.

4. The parties agree that the provisions of paragraphs 114 and 115 and 601.6 and the provisions relating to Existing and Other Agreements (Article XII) of the Master Labor Agreement will be excluded from this Memorandum Agreement and will not be binding upon the Contractor or the Carpenters' Unions.

5. There has been established under this Agreement and the Master Labor Agreement, an Independent Contractors Grievance and Arbitration Trust. The Contractor and the Carpenters Union agree to submit all disputes, including jurisdictional disputes, concerning the interpretation or application of this Agreement and the Master Labor Agreement to arbitration under this Section 5, and the Contractor and the Carpenters Union agree that during the pendency of the grievance and arbitration procedure, the Carpenters' Unions will not strike or withdraw services and the Contractor will not engage in a lockout; provided, however, the Carpenters Union shall have the right to engage in a strike or withdrawal of services and the Contractor may engage in a lockout on a claimed violation of this Agreement or the Master Labor Agreement relating to the payment of wages or contributions to any Trust Fund referred to in this Agreement or failure to comply with a final and binding arbitration award, except as to any provision or arbitration award on subcontracting.

6. The Contractor agrees that in the event the Contractor contracts or subcontracts any carpenter's work, and in the event that such subcontractor fails to pay the wages or the fringe benefits provided under the Agreements between the subcontractor and the Carpenters' Unions, then the Contractor will become liable for the payment of such sums incurred by the subcontractor, and such sums will immediately become due and payable by the Contractor. Such payments will be measured by the hours worked or paid for by the employees of the subcontractor. The Trustees of the Trust Funds referred to in the Master Labor Agreement and this Memorandum Agreement are expressly made third party beneficiaries of the Contractors' promise to make such payments. The Trustees of the Trust Fund referred to in the Master Labor Agreement and this Memorandum Agreement, will have the right to require any Contractor that is a party to this Memorandum Agreement, to post a cash or surety bond in an amount sufficient to safeguard the payment of Trust Fund Contributions that are required to be paid to the Trust Funds in accordance with the Master Labor Agreement.

EXHIBIT NO. 1
PAGE NO. 13

7. Except as specifically excluded by this Memorandum Agreement, the Carpenters Union and the Contractor agree to abide by all the terms and conditions of the Master Labor Agreement and Trust Agreements and any amendments, modifications, changes, extensions and renewals, including changes in wages, benefits, term, coverage, geographic scope or any other changes to such agreements.

8. Preservation of Unit Work:

(a) In order to protect and preserve, for the employees covered by this Agreement, all work heretofore performed by them, and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed as follows: If and when the Contractor performs any on-site construction work of the type covered by this Agreement, under its own name or under the name of another, as a corporation, company, partnership, or any other business entity, including a joint venture, wherein the Contractor (including its officers, directors, owners, partners or stockholders) exercises either directly or indirectly (such as through family members) ownership, management or control, the terms and conditions of this Agreement will be applicable to all such work.

(b) All charges of violations of Subsection (a) of this paragraph, will be considered as a dispute under this Agreement and will be processed in accordance with the procedures for the handling of grievances and the final binding resolution of disputes, as provided in this Agreement. As a remedy for violations of this paragraph the arbitrator is empowered at the request of the Carpenters Union, to require an employer to (1) pay to affected employees covered by this Agreement, including registered applicants for employment, the equivalent of wages lost by such employees as a result of the violations, and (2) pay into the affected joint trust funds established under this Agreement any delinquent contributions to such funds which have resulted from the violations. Provisions for this remedy does not make such remedy the exclusive remedy available to the Carpenters Union for violations of this paragraph; nor does it make the same of other remedies unavailable to the Carpenters Union for violation of this paragraph.

(c) If, as a result of violations of this paragraph 8, it is necessary for the Carpenters Union and/or the trustees of the joint trust funds to institute court action to enforce an award rendered in accordance with subsection (b), or to defend an action which seeks to vacate such award, the Contractor will pay any accountants' and attorneys' fees incurred by the Carpenters Union and/or fund trustees, plus cost of the litigation, which have resulted from the bringing of such court action.

(d) If this paragraph 8 is declared to be unlawful, the parties will negotiate similar language that will give the Carpenters Union equivalent protection.

9. The Contractor and the Carpenters Union expressly acknowledge that on the Contractor's current jobsite work, the Carpenters Union has the support of a majority

EXHIBIT NO. 1
PAGE NO. 14

of the employees performing work covered by this Agreement. The Union has demanded and the Contractor has recognized the Carpenters Union as the majority representative of its employees performing work covered by this Agreement. It is also acknowledged that the Union has provided, or has offered to provide, evidence of its status as the majority representative of the Contractor's employees. By this acknowledgment the parties intend to and are establishing a collective bargaining relationship under Section 9 of the National Labor Relations Act of 1947, as amended. The bargaining unit established by this Agreement and the Master Labor Agreement is accepted by the parties as an appropriate unit for collective bargaining purposes.

10. Each individual Employer signatory hereto specifically waives any right that he or it may have to terminate, abrogate, repudiate or cancel this Agreement during its term or during the term of any future modifications, changes, amendments, supplements, extensions, or renewals of or to said Master Labor Agreement, or to file any petition before the National Labor Relations Board seeking to accomplish such termination, abrogation, cancellation or repudiation or to file a petition seeking clarification or redefinition of the bargaining unit covered by this Agreement.

11. Notwithstanding any provision of the Master Labor Agreement or this Agreement, the individual employer agrees that upon a showing by the Union or any of its affiliates a majority of the individual employer's shop employees, if any, have designated the Union and/or any of its affiliates as their representative for collective bargaining purposes, the individual employer shall recognize the Union and/or its affiliates as the collective bargaining representative of its shop employees and shall forthwith comply with all wages, hours, terms and conditions of the then current Store Fixture Agreement for the term thereof. Proof of such majority representation shall be established by the submission of authorization cards to a neutral third person who shall compare the signatures with appropriate employer records. The individual employer shall fully cooperate in such review upon demand by the Union or any of its affiliates.

12. The Contractor agrees that in the event it performs any work within the jurisdiction of the United Brotherhood of Carpenters in the geographical jurisdiction of the Southwestern Regional Council of Carpenters (State of Arizona, State of Nevada, State of Utah, 12 Southern California Counties) the Contractor shall perform all such work pursuant to the appropriate Carpenters Master Agreement for that area, including but not limited to the hiring hall and subcontracting requirements contained in said Agreements.

13. This Memorandum Agreement shall remain in full force and effect for the period of the term of the Carpenters Master Labor Agreement between United General Contractors Association, Inc. (hereinafter the "Association") and the Southwest Regional Council of Carpenters, United Brotherhood of Carpenters and Joiners of America, dated July 1, 2006, and for the term of any successor Master Labor Agreement(s) and does hereby authorize the Association to represent the Contractor, unless either party shall give written notice by registered or certified mail to the other of desire to change or

EXHIBIT NO. 1
PAGE NO. 15

cancel this Memorandum Agreement at least sixty (60) days, but no earlier than ninety (90) days prior to June 30, 2010, or if such notice is not given, than at least sixty (60) days, but no earlier than ninety (90) days prior to the termination date of a successor Master Labor Agreement. All notices given by the Carpenters Union to the signatory Contractor Association to the Master Labor Agreement shall constitute sufficient notice to the Contractor by the Carpenters' Unions; provided, however, that a notice to the Contractor Association by either party shall not constitute sufficient notice of such intent not to be bound by a new Agreement or renewal or extension of the Master Labor Agreement and Trust Agreements.

Signed this 23 day of February, 2007

**CONTRACTOR:**

MCL Consrution     807514
Firm Name (Print **Exactly** as Listed with State License Board)     State **License** No.

BY: _[signature]_     Wade A McConnell / Owner
(Signature of Contractor)     (Print name and title of person signing)

24008 Telegraph hill ct Valencia 91355
Address    City,    State,    Zip

661-260-3560    661-260-3429           2
Phone Number    Fax Number    e-mail address    No. of Employees

**Specific type of work you perform with your OWN work force:** _____
P.I.C

General Contractor ☑     Subcontractor ☐     Both ☐

**SOUTHWEST REGIONAL COUNCIL OF CARPENTERS**
MIKE McCARRON, Executive Secretary

BY: _[signature]_     Alex Ramirez 209
Signature of Authorized Union Representative     **Print Name and Local No.**

Memoagree2006
06/26/06

EXHIBIT NO. 1
PAGE NO. 16

**CARPENTERS JOURNEYMAN & APPRENTICE RATES EFFECTIVE JULY 1, 2006**
**FOR EMPLOYERS SIGNATORY TO THE 2006-2010 SOUTHERN CALIFORNIA MASTER LABOR AGREEMENT**
**AND MEMORANDUM AGREEMENT LOS ANGELES AND COUNTIES - *OUTSIDE* OF KERN, INYO, MONO AND SAN DIEGO COUNTIES**

| | |
|---|---|
| Health & Welfare | $3.95 |
| Pension | 1.11 |
| Vacation/Supplemental Dues | 3.11 |
| Apprenticeship and Training Trust | .40 |
| Cooperation Committee | .21 |
| Industry Advancement Fund | .06 |
| Contract Administration* | .02* |
| Grievance Trust Fund** | .03** |
| **Total to Funds** | **$8.89** |

*$0.06 for members of AGC, BIA, SCCA, MEA and ECA
**Not paid by members of AGC, BIA, SCCA, MEA and ECA

| CLASSIFICATIONS: | HOURLY WAGE RATE |
|---|---|
| Carpenters, Cabinet Installer, Insulation Installer, Hardwood Floor Worker and Acoustical Installer | $33.61* |
| Bridge Carpenter | 33.74* |
| Millwright | 34.11* |
| Pile Driver/Derrick Bargemen, Bridge or Dock Carpenter, Cable Splicer and Heavy Framer | 33.74 |

* **NOTE:** Premium rate for Certified Welders is $1.00 per hour. Foreman shall be paid not less than $3.00 per hour over the rate for the highest Carpenter Classification for which he has responsibility, excluding Pneumatic Nailer or Power Stapler. Acoustical also pays 20¢ Acoustical Industry Fund, Insulation only pays apprenticeship on prevailing wage projects.

**CARPENTER APPRENTICE (COMMERCIAL)**

| PERIOD | HOURS | PERCENT | WAGE | BENEFIT CODE |
|---|---|---|---|---|
| Pre-Apprentice | 500 | 35% | 11.76 | (1) |
| 1st Period | 600 | 40% | 13.44 | (1) |
| 2nd Period | 600 | 50% | 16.81 | (1) |
| 3rd Period | 600 | 60% | 20.17 | (2) |
| 4th Period | 600 | 65% | 21.85 | (3) |
| 5th Period | 600 | 70% | 23.53 | (3) |
| 6th Period | 600 | 75% | 25.21 | (3) |
| 7th Period | 600 | 80% | 26.89 | (3) |
| 8th Period | 600 | 90% | 30.25 | (3) |
| Journeyman | | 100% | 33.61 | (3) |

**MILLWRIGHT APPRENTICE**

| PERIOD | HOURS | PERCENT | WAGES | CODE |
|---|---|---|---|---|
| Pre-Apprentice | 500 | 40% | 13.64 | (1) |
| 1st Period | 600 | 50% | 17.06 | (1) |
| 2nd Period | 600 | 55% | 18.76 | (1) |
| 3rd Period | 600 | 60% | 20.47 | (2) |
| 4th Period | 600 | 65% | 22.17 | (3) |
| 5th Period | 600 | 70% | 23.88 | (3) |
| 6th Period | 600 | 75% | 25.58 | (3) |
| 7th Period | 600 | 80% | 27.29 | (3) |
| 8th Period | 600 | 85% | 28.99 | (3) |
| 9th Period | 600 | 90% | 30.70 | (3) |
| 10th Period | 600 | 95% | 32.40 | (3) |
| Journeyman | | 100% | 34.11 | (3) |

**PILEDRIVER/BRIDGE CARPENTER APPRENTICE**

| PERIOD | HOURS | PERCENT | WAGE | BENEFIT CODE |
|---|---|---|---|---|
| 1st Period | 600 | 40% | 13.50 | (1) |
| 2nd Period | 600 | 50% | 16.87 | (1) |
| 3rd Period | 600 | 60% | 20.24 | (2) |
| 4th Period | 600 | 65% | 21.93 | (3) |
| 5th Period | 600 | 70% | 23.62 | (3) |
| 6th Period | 600 | 75% | 25.31 | (3) |
| 7th Period | 600 | 80% | 26.99 | (3) |
| 8th Period | 600 | 90% | 30.37 | (3) |
| Journeyman | | 100% | 33.74 | (3) |

*Most Pre-Apprentices are Code (1), check Master Labor Agreement regarding pre-apprentices for other classifications. Pre-Apprentices may not work on prevailing wage projects.

All classifications of Journeyman and Apprentices have vacation/Supplemental dues added to their wages, taxed, withheld and submitted to the trust funds.

**CONTRIBUTION CODE:**

Code 1  Health & Welfare, Vac/Supp Dues ($2.11), Apprenticeship, Coop. Comm., Contract Admin, Industry Adv., Grievance

Code 2  Health & Welfare, Vac/Supp Dues ($3.11), Apprenticeship, Coop. Comm., Contract Admin, Industry Adv., Grievance

Code 3  Pension, Health & Welfare, Vac/Supp Dues ($3.11), Apprenticeship, Coop. Comm., Contract Admin, Industry Adv., Grievance

EXHIBIT NO. 1
PAGE NO. 17

# MC L CONSTRUCTION
## License #971967

### CONTRIBUTIONS

| Period | REF # | Delinquency Type | CACM | CCCC | CIAFCA | DUES | GAT | HW | SWCTF | SWPEN | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 201508 | C53590 | Audit Contributions | | | | | | $753.13 | | | $753.13 |
| 201603 | 17213A | Contributions | | | | | | $27.00 | | | $27.00 |
| 201605 | B46988 | Contributions | $16.12 | $169.28 | $64.48 | $1,152.60 | | $5,319.60 | $459.44 | $3,137.73 | $10,343.45 |
| 201606 | B05536 | Contributions | $36.69 | $385.27 | $146.76 | $2,623.36 | | $12,107.70 | $1,045.69 | $6,127.71 | $22,528.24 |
| 201607 | B05537 | Contributions | $57.05 | $263.34 | $8.69 | $175.95 | | | $606.49 | $3,543.93 | $13,460.45 |
| 201608 | B05538 | Contributions | $21.28 | $276.64 | $85.12 | $1,606.65 | | $7,288.41 | $606.49 | $3,543.93 | $13,460.45 |
| 201609 | B05539 | Contributions | $18.87 | $245.31 | $75.48 | $1,424.70 | | $6,462.99 | $537.81 | $2,441.84 | $11,235.32 |
| 201610 | B05540 | Contributions | $20.25 | $263.25 | $81.00 | $1,528.88 | | $6,935.63 | $577.13 | $2,651.54 | $12,088.06 |
| 201611 | B34382 | Contributions | $17.36 | $225.68 | $69.44 | $1,310.68 | | $5,945.80 | $494.76 | $2,847.26 | $10,937.02 |
| 201612 | B44345 | Contributions | $10.52 | $136.76 | $42.08 | $794.26 | | $3,603.10 | $299.82 | $1,631.00 | $6,533.32 |
| 201710 | C22931 | Contributions | $15.56 | $202.28 | $62.24 | $1,174.78 | | $5,329.30 | $443.46 | $2,404.56 | $9,655.52 |
| 201803 | C22931 | Contributions | $6.52 | $84.79 | $26.09 | | | $2,315.34 | $185.88 | $1,444.16 | $4,072.56 |
| | C406635 | Audit Contributions | | | | | | $297.12 | | | $297.12 |
| **TOTAL C's** | | | **$163.17** | **$1,989.26** | **$652.69** | **$11,615.91** | **$244.83** | **$56,385.12** | **$4,650.48** | **$26,229.73** | **$101,931.19** |

### LIQUIDATED DAMAGES

| Period | REF # | Delinquency Type | DUES | HW | SWCTF | SWPEN | VAC | Grand Total |
|---|---|---|---|---|---|---|---|---|
| 201506 | 17194A | LD | $20.42 | $90.28 | $6.95 | $61.56 | $29.89 | $209.10 |
| 201507 | 17195A | LD | $21.80 | $100.65 | $8.69 | | $15.55 | $146.69 |
| 201507 | 17196A | LD | $57.05 | $263.34 | $22.74 | $175.95 | $80.59 | $599.67 |
| 201508 | 17197A | LD | $46.18 | $213.18 | $18.41 | | $32.94 | $310.71 |
| 201508 | 17198A | LD | $91.66 | $423.06 | $36.53 | $282.68 | $129.48 | $963.41 |
| 201508 | 17199A | LD | $36.46 | $168.30 | $14.53 | $112.45 | $51.51 | $383.25 |
| 201508 | C53591 | Audit LD | | $73.66 | | | | $73.66 |
| 201509 | 17200A | LD | $24.31 | $112.20 | $9.69 | | $17.34 | $163.54 |
| 201509 | 17201A | LD | $125.69 | $580.14 | $50.10 | $387.63 | $177.55 | $1,321.11 |
| 201509 | 17202A | LD | $50.19 | $231.66 | $20.00 | $154.79 | $70.90 | $527.54 |
| 201510 | 17203A | LD | $10.01 | $46.20 | $5.00 | | $7.14 | $68.35 |
| 201510 | 17204A | LD | $125.55 | $579.48 | $50.04 | $387.19 | $177.35 | $1,319.61 |
| 201512 | 17205A | LD | $5.07 | $23.42 | $5.00 | | $5.00 | $38.49 |
| 201512 | 17206A | LD | $83.15 | $383.79 | $33.14 | $256.44 | $117.46 | $873.98 |
| 201601 | 17207A | LD | $11.79 | $54.45 | $5.00 | | $8.41 | $79.65 |
| 201601 | 17208A | LD | $57.91 | $267.30 | $23.08 | $178.60 | $81.81 | $608.70 |
| 201602 | 17209A | LD | $5.00 | $7.59 | $5.00 | | $5.00 | $22.59 |

EXHIBIT NO. 2
PAGE NO. 18

AUDIT FEES INTEREST and BANK CHARGES

| Period | REF # | Delinquency Type | | | | | |
|---|---|---|---|---|---|---|---|
| 201602 | 17210A | LD | $44.75 | $206.58 | $17.84 | $138.03 | $470.42 |
| 201603 | 17211A | LD | $7.43 | $34.32 | $5.00 | | $52.05 |
| 201603 | 17212A | LD | $54.55 | $251.78 | $21.74 | $168.24 | $573.37 |
| 201604 | B20500 | LD | $10.08 | $46.53 | $5.00 | | $68.80 |
| 201604 | B22274 | LD | $72.65 | $335.28 | $28.96 | $224.03 | $763.54 |
| 201605 | B46988 | LD | $115.26 | $531.96 | $45.94 | $313.77 | $1,160.29 |
| 201606 | B05536 | LD | $262.34 | $1,210.77 | $104.57 | $612.77 | $2,516.52 |
| 201607 | B05537 | LD | $160.67 | $728.84 | $60.65 | $354.39 | $1,649.67 |
| 201608 | B05538 | LD | $142.47 | $646.30 | $53.78 | $244.18 | $1,384.49 |
| 201609 | B05539 | LD | $152.89 | $693.56 | $57.71 | $265.15 | $1,484.96 |
| 201610 | B05540 | LD | $131.07 | $594.58 | $49.48 | $284.73 | $1,335.95 |
| 201611 | B34382 | LD | $79.43 | $360.31 | $29.98 | $163.10 | $796.16 |
| 201612 | B44345 | LD | $117.48 | $532.93 | $44.35 | $240.46 | $1,176.65 |
| 201701 | B44346 | LD | $108.34 | $491.49 | $40.90 | $171.26 | $1,033.41 |
| 201702 | B44347 | LD | $161.27 | $731.58 | $60.88 | $285.89 | $1,578.37 |
| 201704 | B54702 | LD | $128.81 | $584.31 | $48.62 | $249.54 | $1,282.16 |
| 201705 | B77270 | LD | $90.75 | $411.69 | $34.26 | $158.44 | $880.38 |
| 201706 | B77271 | LD | $120.95 | $548.69 | $45.66 | $224.38 | $1,201.17 |
| 201707 | B77272 | LD | $152.15 | $683.73 | $54.89 | $308.35 | $1,567.95 |
| 201708 | B77273 | LD | $237.87 | $1,068.91 | $85.82 | $473.82 | $2,449.18 |
| 201709 | B77274 | LD | $260.46 | $1,170.44 | $93.97 | $554.59 | $2,715.56 |
| 201710 | B91592 | LD | $484.11 | $2,175.44 | $174.65 | $998.45 | $5,012.48 |
| 201710 | C40636 | Audit LD | | $29.11 | | | $29.11 |
| 201711 | B97386 | LD | $457.96 | $2,057.94 | $165.22 | $980.53 | $4,785.55 |
| 201712 | C02590 | LD | $854.43 | $3,839.54 | $308.25 | $2,104.33 | $9,225.78 |
| 201801 | C08361 | LD | $576.94 | $2,592.57 | $208.14 | $1,524.56 | $6,338.77 |
| 201802 | C13933 | LD | $297.67 | $1,337.64 | $107.39 | $796.40 | $3,283.47 |
| 201803 | C22931 | LD | $244.90 | $1,100.50 | $88.35 | $686.42 | $2,743.27 |
| TOTAL LDs | | | $6,299.92 | $28,616.02 | $2,355.90 | $14,523.10 | $13,474.59 | $65,269.53 |

| Period | REF # | Delinquency Type | Grand Total |
|---|---|---|---|
| 201508 | C53592 | Audit Interest | $139.97 |
| 201710 | C40637 | Audit Interest | $3.81 |
| TOTAL Interest | | | $143.78 |

EXHIBIT NO. 2
PAGE NO. 19

| Period | REF # | Delinquency Type | Grand Total |
|---|---|---|---|
| 201508 | C53592 | Audit Fees | $29.40 |
| 201710 | C40637 | Audit Fees | $9.60 |
| TOTAL FEEs | | | $39.00 |

TOTAL C's $101,931.19
TOTAL LD's $65,269.53
TOTAL Interest $143.78
TOTAL FEEs $39.00

GRAND TOTAL $167,383.50

EXHIBIT NO. 2
PAGE NO. 20

## SOUTHWEST CARPENTERS TRUSTS
### 533 S. Fremont Avenue, Los Angeles, CA 90071
### AUDIT INVOICE

| | |
|---|---|
| Date: | 02/19/18 |
| Employer Name: | MC L CONSTRUCTION |
| Audit Period: | 10/01/17 thru 12/30/17 |

| | |
|---|---|
| Hours Due: | 16.00 |
| Audit Invoice#: | C9961 |
| License#: | 971967 |
| Auditor Name: | Mabel Pichardo |

**CONTRIBUTIONS**

| | |
|---|---:|
| Health & Welfare | $ 113.60 |
| Pension | $ 78.56 |
| Vacation | $ 64.32 |
| Supplemental Dues | $ 25.28 |
| Apprenticeship | $ 9.12 |
| Industry Advancement | $ 1.28 |
| Residential Fund | $ 0.00 |
| Greivance Fund | $ 0.48 |
| Annuity Fund | $ 0.00 |
| MEA Advancement Fund | $ 0.00 |
| Contract Admin Fund | $ 0.32 |
| Carp/Contr Coop Com Fund | $ 4.16 |
| Acoustical Ind Adv Fund | $ 0.00 |
| Sunday/Holiday | $ 0.00 |
| Carp/CNT Workers Comp | $ 0.00 |
| Drywall Contract Admin | $ 0.00 |
| Drywall Lathing Labor | $ 0.00 |
| Unallocated Overpayment | $ 0.00 |
| Build New Mexico | $ 0.00 |
| Labor Management | $ 0.00 |
| **Total Contributions** | **$ 297.12** |

**LIQUIDATED DAMAGES**

| | |
|---|---:|
| Health & Welfare Liquidated Damages | $ 11.36 |
| Pension Liquidated Damages | $ 7.86 |
| Vacation Liquidated Damages | $ 6.44 |
| Supplemental Dues Liquidated Damages | $ 2.53 |
| Apprenticeship Liquidated Damages | $ 0.92 |
| Annuity Liquidated Damages | $ 0.00 |
| Drywall Contract Admin | $ 0.00 |
| CAF/AGC | $ 0.00 |
| **Total Liquidated Damages** | **$ 29.11** |

| | |
|---|---:|
| **TOTAL AUDIT INTEREST** | $ 3.81 |
| **TOTAL AUDIT FEES** | $ 9.60 |
| **TOTAL AUDIT FINDINGS FOR ALL TRUSTS** | $ 339.64 |

| | |
|---|---:|
| Unpaid Reports | $ 0.00 |
| Bad Checks | $ 0.00 |
| Previously Assessed Liquidated Damages | $ 0.00 |
| **TOTAL AMOUNT DUE** | **$ 339.64** |

EXHIBIT NO. 3
PAGE NO. 21

| CONTRACTOR: | MC L CONSTRUCTION |
|---|---|
| LICENSE: | 971967 |
| BILLING DATE: | 12/19/2018 |
| AUDIT INVOICE # | C9961 |

| SSN | NAME | AG CODE | CONTRACT | MO/YR | ACTUAL HOURS WORKED ST. | REPORTED HOURS SU | REPORTED HOURS ST. | REPORTED HOURS DT. | HOURS CLAIMED S | HOURS CLAIMED ST. | HOURS CLAIMED TOTAL | CONTRIBUTIONS DUE | INTEREST DUE | LIQUIDATED DUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 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 | ZAPATA ARAMBULA, JAVIER | SCMLACOMM17-07 | 10700a | Nov-17 | 160.00 | | 144.00 | | | 16.00 | 16.00 | $ 297.12 | $ 3.81 | $ 29.09 |
| | | | | | | | | | | | | $ - | $ - | $ - |
| | | | | | 160.00 | | 144.00 | | | 16.00 | 16.00 | $ 297.12 | $ 3.81 | $ 29.09 |

$ 330.02

EXHIBIT NO. 3
PAGE NO. 22

MBR: 384720 DAMIAN NAVA, ANTONIO

**SOUTHWEST CARPENTERS TRUSTS**
533 S. Fremont Avenue, Los Angeles, CA 90071

SSN: ███████4783

**CHECK STUB AUDIT INVOICE**

Date: 04/30/18
Employer Name: MC L CONSTRUCTION
Audit Period: 08/16/15 thru 10/10/15

Hours Due: 49.00
Audit Invoice#: C3560
License#: 971987
Auditor Name: Mabel Pichardo

**CONTRIBUTIONS**   Entered billing in EBT. Hours are not keyed yet.

| | |
|---|---|
| Health & Welfare | $ 323.40 |
| Pension ...md1, 4/30/2018.. | $ 216.09 |
| Vacation | $ 98.98 |
| Supplemental Dues | $ 70.07 |
| Apprenticeship | $ 27.93 |
| Industry Advancement | $ 3.92 |
| Residential Fund | $ 0.00 |
| Greivance Fund | $ 1.47 |
| Annuity Fund | $ 0.00 |
| MEA Advancement Fund | $ 0.00 |
| Contract Admin Fund | $ 0.98 |
| Carp/Contr Coop Com Fund | $ 10.29 |
| Acoustical Ind Adv Fund | $ 0.00 |
| Sunday/Holiday | $ 0.00 |
| Carp/CNT Workers Comp | $ 0.00 |
| Drywall Contract Admin | $ 0.00 |
| CAF/AGC | $ 0.00 |
| Build New Mexico | $ 0.00 |
| Safety | $ 0.00 |
| **Total Contributions** | $ 753.13 |

AK- C53590

**LIQUIDATED DAMAGES**

| | |
|---|---|
| Health & Welfare Liquidated Damages | $ 32.34 |
| Pension Liquidated Damages | $ 21.61 |
| Vacation Liquidated Damages | $ 9.90 |
| Supplemental Dues Liquidated Damages | $ 7.01 |
| Apprenticeship Liquidated Damages | $ 2.80 |
| Annuity Liquidated Damages | $ 0.00 |
| Drywall Contract Admin | $ 0.00 |
| CAF/AGC | $ 0.00 |
| **Total Liquidated Damages** | $ 73.66 |

ALD- C53591

**TOTAL AUDIT INTEREST** .............. AI- C53592 .... $ 139.97

**TOTAL AUDIT FEES** .............. AF- C53593 ... $ 29.40

**TOTAL AUDIT FINDINGS FOR ALL TRUSTS** ................ $ 996.16

| | |
|---|---|
| Unpaid Reports | $ 0.00 |
| Bad Checks | $ 0.00 |
| Previously Assessed Liquidated Damages | $ 0.00 |

**TOTAL AMOUNT DUE** .............. $ 996.16

EXHIBIT NO. 3
PAGE NO. 23

| CONTRACTOR: | MCL CONSTRUCTION |
|---|---|
| LICENSE: | 971567 |
| BILLING DATE: | 4/30/2018 |
| AUDIT INVOICE # | C3560 |

| SSN | NAME | CONTRACT | MO/YR | ACTUAL HOURS WORKED | | | REPORTED HOURS | | | HOURS CLAIMED | | | CONTRIBUTIONS DUE | INTEREST DUE | LIQUIDATED DAMAGES DUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | ST. | OT. | DT. | SU/HOL | ST. | OT. | DT. | SU/HOL | ST. | OT. | DT. | SU/HOL | | | |
| 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 | DAMIAN NAVA, ANTONIO | 8059a | Sep-15 | 145.00 | | | | 144.00 | | | | 1.00 | | | | $ 15.37 | $ 2.96 | $ 1.51 |
| 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 | DAMIAN NAVA, ANTONIO | 8059a | Oct-15 | 48.00 | | | | | | | | 48.00 | | | | $ 737.76 | $ 137.01 | $ 72.15 |
| | | | | 193.00 | | | | 144.00 | | | | 49.00 | | | | $ 753.13 | $ 139.97 | $ 73.66 |

EXHIBIT NO. 3
PAGE NO. 24

**Employer:** MC 1 CONSTRUCTION
**License#** 971967

**Participant** DAMIAN NAVA, ANTONIO
**Participant#** 384720

| Month | Check Stubs Submitted | | | | Reported Hrs | Diff | Verification | | |
|---|---|---|---|---|---|---|---|---|---|
| | Per End | Ck Date | Hrs | Total Hrs | | | current | ytd | check |
| Aug-15 | 08/22/15 | 08/29/15 | 40.00 | | | | | $ | . |
| | 08/29/15 | 09/05/15 | 40.00 | 80.00 | 80.00 | - | | $ | . |
| Sep-15 | 09/05/15 | 09/12/15 | 41.00 | | | | | $ | . |
| | 09/12/15 | 09/19/15 | 32.00 | | | | | $ | . |
| | 09/19/15 | 09/26/15 | 32.00 | | | | | $ | . |
| | 09/26/15 | 10/03/15 | 40.00 | | | | | $ | . |
| | 10/03/15 | 10/10/15 | | 145.00 | 144.00 | -1.00 | | $ | . |
| Oct-15 | 10/03/15 | 10/10/15 | 40.00 | | | | | $ | . |
| | 10/10/15 | 10/10/15 | 8.00 | | | | | $ | . |
| | 10/17/15 | 10/24/15 | | | | | | $ | . |
| | 10/24/15 | 10/31/15 | | | | | | $ | . |
| | 10/31/15 | 11/07/15 | | 48.00 | | 48.00 | | $ | . |
| Nov-15 | | | | . | | . | | $ | . |
| Dec-15 | | | | . | | . | | $ | . |
| Jan-16 | | | | . | | . | | $ | . |
| Feb-16 | | | | . | | . | | $ | . |

EXHIBIT NO. 3
PAGE NO. 25

**WADE ANTHONY MCCONNELL and LORAINE ANN MCCONNELL**

| Period | REF # | Delinquency Type | DUES |
|---|---|---|---|
| 201605 | B46988 | Contributions | $1,152.60 |
| 201606 | B05536 | Contributions | $2,623.36 |
| 201607 | B05537 | Contributions | $1,606.65 |
| 201608 | B05538 | Contributions | $1,424.70 |
| 201609 | B05539 | Contributions | $1,528.88 |
| 201610 | B05540 | Contributions | $1,310.68 |
| 201611 | B34382 | Contributions | $794.26 |
| 201612 | B44345 | Contributions | $1,174.78 |
| | | | |
| TOTAL C's | | | $11,615.91 |

EXHIBIT NO. 4
PAGE NO. 26

SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement is made and entered into by and between Carpenters Southwest Administrative Corporation, a California non-profit corporation and Board of Trustees for the Carpenters Southwest Trusts (collectively "CSAC"); and MCL Construction, Inc., a California corporation ("MCL"), with respect to the following facts:

This Settlement Agreement ("Agreement") is entered into by and between the parties, in order to settle and conclude the controversy between the parties relating to MCL's alleged breach of an allegedly enforceable collective bargaining agreement.

CSAC made demand upon MCL for monies owed on unpaid reports and check stub audit billings for the period June through August 2009, September 2009 through January 2010, April 2010 through October 2010, December 2010 through May 2011, July 2011 through October 2011, July 2013 through April 2013; and unfiled reports for the period May 2013 through the present. The total owed as of January 7, 2014 is $111,924.68.

The parties have agreed to settle this matter in the interest of avoiding time and expense which would be incurred in litigation upon the satisfaction of certain conditions set forth as follows:

NOW, THEREFORE, in consideration of the foregoing recitals and the terms and conditions of the following agreement, it is agreed and stipulated as follows:

1. **Incorporation of Recitals**. All of the foregoing factual recitals are incorporated herein by this reference and made a part of this Agreement.

2. **Terms** :
    2.1. Upon execution of the Agreement, MCL shall pay to CSAC the sum of $5,000.00 as a down payment on a payment plan.
    2.2. Employer will pay to CSAC the remaining $78,392.77 owed in contributions. Monthly payments will be $350.00.
    2.3. Payments are to be made on the first day of each month and are to be made payable to the order of "Carpenters Southwest Administrative Corporation" and mailed to:
  DeCarlo & Shanley
  533 S. Fremont Avenue, 9th Floor
  Los Angeles, CA 90071-1706
  Attn: Roberta Olson
    2.4. If payments are not received by CSAC in the full amount agreed upon on the payment due date, CSAC may, upon ten (10) days notice to MCL declare the payment plan in default. Notice given by telephone, facsimile or email shall be deemed proper notice. Employers' address, telephone, email, and facsimile numbers for purposes of notice are:
  MCL Construction
  24008Telegraph Hill Ct.
  Valencia, CA 91355

EXHIBIT NO. 5
PAGE NO. 27

Attn: Wade McConnell
Phone: (661) 260-3560
Fax: (661) 260-3429
mclconstruction@att.net

It is the responsibility of Employer to notify CSAC if there is a change in address, telephone number, email or facsimile number for purposes of notice under this provision.

    2.5. Liquidated damages and interest of $28,531.91 will be waived by CSAC upon completion of the payment plan detailed in paragraph 2.2 above.

    2.6. MCL must file monthly employer reports and payments on the reports in a timely manner.

    2.7. This payment plan shall be revisited by the parties every six months, beginning with a date six months from the date of execution to determine if MCL's financial picture has improved so that monthly payments may be increased, and to review the terms of the Agreement.

    3. **Release.** MCL releases and discharges CSAC from any and all claims, demands, liens, rights and causes of action, at law or in equity, of any nature, whether known or unknown, arising out of the Lawsuit. MCL expressly waives and assumes the risk of any and all claims for damages arising out of the Lawsuit in which they do not know or suspect to exist, whether through ignorance, oversight, error, attorneys' mistake, negligence, or otherwise and which, if known, would materially affect their decision to enter into this Agreement. However, this release is not intended as a release of CSAC's and MCL's right to enforce the terms of this Agreement.

    4. **Consideration**. All parties acknowledge that in entering into this Agreement and taking th actions which they agree to undertake under the terms of this Agreement, they are receiving good and valuable consideration in terms of this Agreement.

    5. **Entire Agreement**. This Agreement and any document or instrument executed in connection herewith, constitutes the complete agreement of the parties with respect to the subject matters referred to herein, and supersedes all prior or contemporaneous negotiations, promises, covenants, agreements or representations of every nature with respect there, all of which have become merged and integrated into this Agreement. All of the parties understand that in the event of any subsequent litigation, controversy or dispute concerning any other terms, conditions or provisions of this Agreement, neither shall be permitted to offer or introduce any oral evidence concerning any other oral promises or oral agreements between the parties relating to the subject matters of this Agreement not included herein and not reflected by a writing. This Agreement cannot be amended, modified or supplemented except by a written document signed by the affected parties. This Agreement is the product of negotiation between the parties an therefore, the parties waive any right to require that any ambiguity or question about the terms thereof be construed adversely against any of them.

    6. The parties hereto represent, warrant and agree that upon executing and entering into this Agreement that they, and each of them, are not relying upon and have not relied upon any representation, promise, or statement made by anyone which is not recited, contained or

EXHIBIT NO. 5
PAGE NO. 28

embodied in this Agreement. The parties, and each of them, agree and expressly assume the risk that any fact not recited, contained or embodied in this Agreement may turn out to be other than, different from, or contrary to the facts now known to them or believed by them to be true, and further agree that this Agreement shall be effective in all respects notwithstanding, and shall not be subject to termination, modification or rescission by reason of any such difference in facts.

7. Miscellaneous

7.1. **Counterparts**. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same agreement.

7.2. **Headings**. The headings preceding each of the paragraphs in this Agreement are for convenience only and shall not be considered in the construction or interpretation of this Agreement.

7.3. **Time of Essence**. Time is of the essence in the performance of this Agreement.

7.4. **Binding Effect**. This Agreement shall be binding upon and shall inure to the benefit of the respective parties hereto, their heirs, estates, successors and assigns.

7.5. **Governing Law**. This Agreement shall be construed and governed by the laws of the State of California.

7.6. **Authority**. Each party warrants that they have the authority to enter into this Agreement and that they have not sold, assigned or transferred, and will not assign or to any other person, firm or corporation, in any manner, by way of subrogation or operation of law, or otherwise any portion of any claim, right, demand, action or cause of action that it has or might have rising out of any of the matters referred to in this to any matter covered by this Agreement, nor any portion of any recovery to settlement to which it might be entitled. In the event that any claim, demand or suit should be made or instituted against any party or parties because of any such purported assignment, subrogation or transfer, the party from whom such purported assignment, subrogation or transfer was alleged to have occurred agrees to indemnify and hold harmless the other party against such claim, suit or demand, including necessary expenses of investigation, attorney's fees and costs. In fact, each person who executed this Agreement represents and warrants that he had been authorized by such party to entered into the Agreement and hold them harmless against any claim, suit or demand, including necessary attorney's fees, in which it may be asserted that he was not so authorized. Each party agrees to indemnify each other party from any and all claims, demand, loss, damages, liability, and expense resulting from any breach of the representations and warranties contained herein.

7.7. **Advice of Counsel**. The parties have had an opportunity to seek the advice of legal counsel prior to signing this Agreement. The parties executed this Agreement voluntarily, with full knowledge of its significance.

7.8. **Enforceability**. The inapplicability, illegality or unenforceability for any reason of any provision of this Agreement shall neither limit nor impair the operation or validity of any other provision of this Agreement.

7.9. **Action to Enforce.** If any party to this Agreement brings an action (including arbitration) proceeding, or motion against any other party to this Agreement to enforce any provision of this Agreement, to obtain a declaration of rights or duties under it, to

EXHIBIT NO. 5
PAGE NO. 29

rescind it or by reason of a breach of any term or condition set forth in it, the prevailing party in any such action, proceeding or motion shall be entitled to have and recover its attorneys' fees and costs against any non-prevailing parties.

    IN WITNESS WHEREOF, this Agreement has been duly executed by the parties hereto as of the date set forth below.

DATED: March 19th, 2014

    CARPENTERS SOUTHWEST
    ADMINISTRATIVE CORPORATION

    By: _____
    LaNell Petersen
    Assistant Administrator

DATED: March 20, 2014

    BOARD OF TRUSTEES FOR THE
    CARPENTERS SOUTHWEST TRUSTS

    By: _____
    Gordon K. Hubel
    Its Trustee

    MCL CONSTRUCTION, INC.

DATED: 3-11-2014

    By: _____

4

## Roberta Olson

**From:** Roberta Olson
**Sent:** Friday, August 12, 2016 4:52 PM
**To:** Wade McConnell
**Subject:** Carpenter/MCL Construction - LATE NOTICE

Dear Mr. McConnell:

This is to advise you that we have not received your August 1, 2016 payment in the sum of $350.00.

Pursuant to the terms of the Settlement Agreement, this is ten (10) days written notice to submit your payment and avoid the payment plan from going into default.

Additionally, I have previously notified you that your payment of the May 2016 report has been returned as NSF and your June 2016 report and payment had not been received. If you have not already done so, please submit payment for the May 2016 report and submit the June 2016 report with payment as soon as

Please call me should you have any questions.

_____
Roberta Olson, Paralegal
DeCarlo & Shanley
533 S. Fremont Ave., 9th Floor
Los Angeles, CA  90071
213/488-4100
Fax 213/488-4180

1

EXHIBIT NO. 6
PAGE NO. 31